### SAMUEL JAQUES *vs.* HENRY HALL & others.

The plaintiff, in a bill in equity to enforce a trust in which he and his children are inter ested, may by supplemental bill enforce rights acquired by him by assignment from his children since the original bill was filed.

BILL IN EQUITY, filed at March term 1844 against Henry Hall and James Dana, alleging a purchase by subscription of many persons, in 1831, of the Ten Hills Farm in Somerville, and the conveyance thereof, and the payment, by the subscribers, of additional sums of money to five trustees, in trust to pay the expenses of stocking and furnishing the farm, and erecting and repairing buildings thereon, and upon the further trust to convey the farm to the plaintiff, (if not sooner sold under a power given them by the deed of trust,) on payment by him of the purchase money and additional sums, with interest and expenses; the constant residence of the plaintiff on the farm ever since, and his payment of the interest until 1837 or 1838; a proposal made by a majority of the subscribers, with the plaintiff's consent, to sell the farm at auction, as they were authorized to do; a purchase by Hall, in 1842, for a large sum of money, of the interest of the subscribers in the farm, at the plaintiff's request, under an agreement between Hall and the plaintiff that the farm should be sold, and that, after paying certain debts due to Hall, and to a corporation of which he was treasurer, from the plaintiff and his son, and all expenses, and a compensation for Hall's services, " whatever might remain should revert to his heirs," and that Hall should " convey by quitclaim whatever

interest he may have in the lands unsold ;" the subsequent sale by Hall of part of the farm, with the plaintiff's consent; the plaintiff's offer and readiness to pay the balance due Hall under the agreement; and an improvident contract of Hall to sell part of the farm to Dana, who knew of the plaintiff's interest. The bill prayed for a discovery and an injunction, and that the contract between Hall and Dana might be annulled and declared void, and for an account, a conveyance from Hall to the plaintiff, and for further relief.

At the same term Hall and Dana filed answers. Hall, in his answer, denied that he held the land in trust for the plaintiff, but alleged that on payment of the money due him and a compensation for his services as trustee, he, by agreement with the plaintiff, was to convey the land to the plaintiff's heirs, meaning his children. At November term 1844, the plaintiff filed a general replication.

The court ordered a temporary injunction ; and at March term 1846, after a full hearing on the evidence, passed an interlocutory decree, annulling and rescinding the contract between Hall and Dana, ordering it to be given up to be cancelled ; declaring that Hall held so much of the farm, as then remained in his hands unsold, in trust to secure the balance due of the money expended by him in purchasing the farm, and the debts mentioned in his agreement, with interest, and a reasonable compensation for his services, and all charges and expenses; referring the case to a master to ascertain and report the amount then due and unpaid, as security for which Hall held the farm ; giving the plaintiff leave to amend by making his eight children parties to the bill ; and reserving all further questions until the coming in of the master's report. By another interlocutory decree, Hall was authorized to sell enough of the farm to pay the balance due him, the amount of which was agreed between him and the plaintiff.

At March term 1852, the plaintiff amended his bill, pursuant to the first interlocutory order, by stating that he was informed and believed that his said children alleged that Hall held the farm in trust for them, subject to the payment of the amount of

said debts; and alleging that Hall held the same in trust for the plaintiff and was bound to reconvey the same to him; and praying that the children might be made defendants. The children appeared, but filed no answer.

At November term 1852, the plaintiff, by leave of court, filed a supplemental bill, alleging that since the first interlocutory order, to wit, on the 25th of March 1847, his said children had released and assigned to him all their right, title, interest and estate, and claim, both at law and in equity, in the farm and its appurtenances, and in all their claims against Hall for an account; and did also in writing require Hall to convey the farm, or so much as remained undisposed of, to the plaintiff in fee simple, whenever the balance of the money for which the farm was held by Hall as security should be paid; and that Hall had been fully paid said balance, but still refused to convey the farm to the plaintiff, without a decree of the court; and praying for a conveyance of so much of the farm as had not been already conveyed, and for further relief.

Hall and the plaintiff's children demurred generally to the supplemental bill.

This case was argued at March term 1854, by *F. C. Loring,* for the defendants, and *S. E. Sewall,* for the plaintiff.

DEWEY, J. The first ground relied upon to sustain this demurrer is, that the supplemental bill sets forth a new and distinct title, and not the same as that alleged in the original bill.

It is also urged that the plaintiff has no interest, legal or equitable, under the declaration of trust by Hall, sufficient to entitle him to maintain his bill. This point was fully open to Hall at the former hearing on the original bill. But after full argument, and upon a consideration of the objections urged to maintaining the original bill, it was held by the court that the plaintiff had such an interest in the subject of the suit as to sustain the bill and authorize a decree thereon. That decree sustained the bill, annulled the contract between Hall and Dana, declared that Hall held the estate in trust, and declared the lien upon the land, or charges upon the same, in his favor, and ordered a reference to a master to state the amount of the same; and by a

subsequent order of the court a sale was ordered to be made of so much of the real estate as would satisfy the claims of Hall, leaving nothing further to be done but the final order for reconveying the residue of the estate.

The original bill having however disclosed a trust, in which it might be alleged that the children of the plaintiff had an interest, they were ordered to be made parties by an amendment to the bill, and the question between the plaintiff and his children, whether they could set up an adverse claim as "his heirs," would, if nothing further had occurred, have required an adjudication, before directing the appropriation of any cash surplus, or a reconveyance of any land that might remain, after discharging all liens in favor of Hall. But this was a question between the plaintiff and his children only, and of no interest to Hall.

Subsequently, and before a hearing on the amended bill, the plaintiff filed his supplemental bill, setting forth the release and assignment of all rights of his children to him, and their written authority and request to Hall to convey any land, remaining in his hands under said deed of trust, to the plaintiff, and praying for a further decree to that effect.

To the supplemental bill, Hall and the children of the plaintiff filed their joint demurrer. And the further question is, whether such demurrer is well taken, upon the ground that the supplemental sets up a newly acquired interest in the plaintiff, not the subject of the original bill, and acquired since the filing of the same.

The rule sought to be applied to this case, and one well sustained by authority, is that a bad title, set up in the original bill, cannot be aided by a supplemental bill, setting up a new and distinct title. Thus, in the case of *Tonkin* v. *Lethbridge*, Coop. 43, where the plaintiff filed a bill to redeem a mortgage, alleging his title to be that of heir to the mortgagor, on the trial of that issue it was found against him; but the plaintiff, having, subsequently to filing his bill, purchased of the heir of the mortgagor the right in equity to redeem this mortgage, sought by a supplemental bill to sustain his original bill, which, but for this new purchase, utterly failed of presenting any ground for sus-

taining it; and upon demurrer, the supplemental bill was held bad. In that case, it will be perceived, the plaintiff had not any sufficient interest to maintain the original bill for any purpose; and this is the principle as stated in 3 Dan. Ch. Pract. 1658. It is where the right to maintain the original bill wholly fails, that no supplemental bill as to new matter can be filed.

But it is not so where the plaintiff has subsequently strengthened an inchoate title, as in *Mutter* v. *Chauvel*, 5 Russ. 42, where the plaintiff claimed a right to the rents and profits of a benefice, by virtue of a nomination by himself under an equitable right to nominate derived from his father's will, and filed a bill against the incumbent and others, who claimed the right of nomination in opposition to the plaintiff; and it being made to appear that, a long time after the filing of the bill, a deed of release had been executed by his sisters to the plaintiff, which release formed an essential part of the plaintiff's title to the right of nomination, the plaintiff was thereupon allowed to file a supplemental bill, setting forth this new and additional title.

In *Candler* v. *Pettit*, 1 Paige, 168, where the rule is stated thus, " If the original bill is wholly defective, so that no valid decree could be made thereon, the party cannot, by filing a supplemental bill, founded upon matters which have subsequently taken place, sustain the proceeding originally commenced," yet it was held that a supplemental bill might be filed. The original bill prayed for a *ne exeat*, and also an injunction against the defendant, and the case stated in the bill would only justify a decree of *ne exeat*; but the plaintiff was allowed to file a supplemental bill, alleging facts which had occurred subsequently to the filing of the original bill, and thus entitle himself to the injunction prayed for in the original bill.

The case of *Edgar* v. *Clevenger*, 2 Green Ch. 258, illustrates the rule and its qualification or exception. In that case, the plaintiff had filed a bill for relief against a fraudulent judgment, in favor of a third person, against the debtor of the plaintiff, asking to have the judgment set aside, and for a present injunc-

tion, and also stating that he held a mortgage of a certain portion of the land in controversy, and alleging waste. It appeared that the plaintiff had not obtained any judgment on his demand at the time of filing his original bill, and so was not in any situation to maintain his bill generally to set aside the alleged fraudulent judgment; but, pending the bill, he had obtained judgment on his demand, and asked general relief as such judgment creditor. The court held him not entitled to such relief under his original bill, but allowed him to file a supplemental bill stating his judgment thus acquired. The court conceded that if the bill were entirely defective, so that no valid decree could be made upon it, it could not be aided by a supplemental bill founded on facts that had subsequently taken place; but held that, as a part of the plaintiff's debt was secured by a mortgage on the lands levied upon by the defendant, and as the bill alleged that fact, and that the defendant was destroying the timber thereon, an injunction was properly ordered to stay waste and destruction of the property; and the court further held that, having possession of the case for temporary relief, and the bill being sustainable on that ground, they might also give the more general relief prayed for, although only authorized so to do upon the new facts alleged in the supplemental bill.

In the case of *Hasbrouck* v. *Shuster*, 4 Barb. 285, a supplemental bill was allowed, stating an agreement made between the parties subsequently to the original bill, which would vary the relief to which the plaintiff was entitled.

So in *Winn* v. *Albert*, 2 Maryland Ch. 42, where the plaintiffs sought to restrain the defendant from taking a conveyance of certain property in fraud of creditors, the plaintiffs' title, as was stated in the bill, and as was the fact, was merely that of a trustee under a common law assignment from the debtor; but pending the bill, and after an injunction ordered, the debtor became a subject of the statute for regulating insolvent proceedings, and the plaintiffs were appointed trustees under the statute; and they were allowed, under a supplemental bill, to avail themselves of this new and better title, the chancellor holding that "if the original bill was sufficient to entitle the plaintiff to

one kind of relief, and facts subsequently occur which entitle him to other or more extensive relief, he may have such relief by setting out such new matter in the form of a supplemental bill."

We are then to inquire whether the original bill in the present case was so entirely defective that no decree could be made upon it. If it were so, then this supplemental bill was properly the subject of a demurrer. If, on the other hand, the original bill was sustainable, and the supplemental bill only changes the extent and kind of relief, then it is properly before us, and may be sustained. A recurrence to the course of the proceedings on the original bill fully meets this inquiry. Such bill, upon the facts therein stated, and upon the interest therein alleged in the plaintiff, was deemed sufficient to authorize the bill to be sustained, a perpetual injunction against the proposed conveyance to Dana, a reference to a master to state the amount of the claims of Hall chargeable on this land, and a subsequent order for a sale by Hall of so much of the land as was sufficient to satisfy his demands secured by the same. The newly acquired interest was not essential to those decrees, and the bill was, by the former adjudication, sustainable without the newly acquired interest. That interest, thus newly acquired, may enlarge the rights of the plaintiff, and authorize the court to give him greater and more extended relief, and this is the whole effect of it. What was the subject of controversy between himself and his children, as to the appropriation of the land remaining after discharge of the claims of Hall, is no longer so, if the facts alleged in the supplemental bill be true ; and thus it establishes the certainty of his interest in the surplus in the hands of Hall. The original bill having been sustained, the supplemental bill may have effect in entitling the plaintiff to more extended relief. This right being established, Hall may be required to transfer to him all the lands remaining in his hands under the trust he assumed.     *Demurrer overruled.*

A decree was afterwards entered for a conveyance from Hall to the plaintiff, as prayed for in the supplemental bill.